UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AMY M. BAILEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:20-cv-00042-JAW |
| | ) | |
| LOUIS DEJOY, Postmaster | ) | |
| General of the United States | ) | |
| Postal Service, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff alleges that her former employer, the United States Postal Service, discriminated against her based on her disability. Plaintiff initially asserted claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq. In her response to Defendant's partial motion to dismiss, Plaintiff evidently attemps to assert more than ten additional violations of federal law. Defendant has moved to dismiss all Plaintiff's claims except the claims arising under the Rehabilitation Act.[1] *See* Fed. R. Civ. P. 12(b)(1), (6). (Motion, ECF No. 29; Reply, ECF No. 36.)

Following a review of the record and after consideration of the parties' arguments, I recommend the Court grant in part and deny in part Defendant's motion to dismiss.

---

[1] Defendant initially filed a partial motion to dismiss, seeking to dismiss Plaintiff's claim under the ADA for lack of subject matter jurisdiction. (Motion at 2-3, ECF No. 29.) After Plaintiff responded to the partial motion to dismiss and asserted additional claims, in his reply, Defendant moved to dismiss the additional claims. (Reply at 2-7, ECF No. 36.)

**BACKGROUND**

**A.      Factual Background**

The following facts are drawn from Plaintiff's complaint, including the attached exhibits, and Plaintiff's subsequent pleadings. *See Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist. LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) (stating that a court may "consider other filings by a self-represented plaintiff, 'including [the] response to the motion to dismiss, to understand the nature and basis of [her] claims'" (quoting *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003)).  Plaintiff's factual allegations are deemed true when evaluating a motion to dismiss. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017) (considering a motion to dismiss pursuant to Rule 12(b)(6)); *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (considering a motion to dismiss pursuant to Rule 12(b)(1)).

Plaintiff was formerly employed by the United States Postal Service.  (Complaint at 5, ECF No. 1; Exhibit at 1, ECF No. 1-3.)  She worked as a mail handler and her duties included sorting mail that came through the facility. (Exhibit at 1, 3.)  According to Plaintiff, she has dissociative amnesia which "causes short term memory loss." (Exhibit at 6.)  Plaintiff alleges she made a request for an accommodation in her job, but Defendant failed to make the accommodation.  (Complaint at 5; Exhibit at 1.)  Because of her disability, Plaintiff "need[ed] to sometimes write things down," and claims that this can be done through use of a cellphone or a notepad.  (Exhibit at 7.)  Evidently, Plaintiff occasionally wrote notes on her phone while performing her job.  (Exhibit at 4.)

2

Plaintiff alleges that the postal plant manager, Brandon Pinkham, "violated protocols and established policies" during her employment. (Complaint at 5.) Plaintiff asserts she was told during her training that she should "tag" any "broken and dangerous equipment" so that it could be repaired. (Exhibit at 1; Response ¶ 10, ECF No. 32.) According to Plaintiff, she "tagged" several pieces of equipment, but the plant manager removed the tags. (Exhibit at 1-2.) Plaintiff alleges that a full-time employee filed a "union complaint" about the issue. (Exhibit at 2.) Plaintiff also alleges that she was retaliated against "for removing a dangerously damaged cage from the floor [and] 'tagging' it." (Response ¶ 39.)

Plaintiff maintains that she was informed during her training that she would be able to train in other departments, but she was "passed up on greater than 7 occasions." (Exhibit at 1.) She alleges that other employees were able to conduct this additional training and that of the ten other people hired at the same time, she was the only one not trained in other departments. (*Id.*) Plaintiff asserts that her "work duties were limited to 3 areas." (Response ¶ 50.) Plaintiff also alleges that the plant manager would assign only her to a workstation that usually required two employees. (Exhibit at 2.) She claims that she often worked alone for up to two hours, while others worked in groups of two or three. (*Id.*) Plaintiff asserts the manager refused to train her on the use of a scanning device and called her "useless" when she tried to use it. (Exhibit at 2, Response ¶ 46.)

Plaintiff alleges that on one instance, the plant manager threw a box while they were sorting mail and the box struck her in the head. (Exhibit at 3.) After she was struck, she experienced a "headache and dizziness." (*Id.*) Plaintiff sought to write a report about the

3

incident with one of her supervisors but was unable to do so.  (Exhibit at 3-4.)  Plaintiff took the following day off.  (Exhibit at 4.)  , Plaintiff alleges that upon her return to work, her "card was pulled."  (*Id*.)  Plaintiff claims that she was eventually able to file a report with the plant manager about the incident. (*Id.*)  At some point, the plant manager informed her that if she filled out an accident report or "voic[ed] a complaint" then she "would not be hired again."  (Response ¶ 40.)

According to Plaintiff, the plant manager also conducted a performance review regarding Plaintiff's employment.  (Exhibit at 4.)  The manager cited Plaintiff for some absences, which Plaintiff disputed.  (*Id*.)  Plaintiff alleges that other employees were not cited for having a similar number of absences.  (*Id.*)  Plaintiff claims that she asked for a copy of her the "review," but the plant manager "wouldn't give [her] a copy" and and "alter[ed] the document."  (Exhibit at 4; Response ¶ 34.)  (*Id.*)

Plaintiff asserts that on three different days she was told that there was no work and that she did not have to come to work.  (Exhibit at 5.)  After the third day, Plaintiff informed an administrator at the plant of the events that had occurred "after [Plaintiff] asked for an accommodation [for her] disability." (*Id*.)  Plaintiff spoke with the administrator about "being discriminated against because of [her] condition and retaliated [against] because of the incident [where she] got hit with a package."  (*Id.* at 5-6.)  Plaintiff claims the administrator told her that he would speak to the plant manager about Plaintiff returning to her shift.  (*Id.* at 5.)  Later that same day, Plaintiff received a call informing her that she was "let go" from her position.  (*Id.* at 6.)

**B.      Procedural Background**

Plaintiff filed a complaint against Defendant[2] on February 6, 2020, asserting claims under the ADA and sections 503 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 793-794.[3] (Complaint at 4.)   On December 18, 2020, Defendant filed a partial motion to dismiss Plaintiff's claim asserted under the ADA for lack of subject-matter jurisdiction, arguing that, pursuant to 42 U.S.C. § 12111(5)(B), the Postal Service is exempt as an "employer" under the ADA.   (Motion at 2.)   Plaintiff filed a response to the motion to dismiss on January 8, 2020, in which motion she sought to "correct errors" and amend the "Civil Cover Sheet" by asserting additional claims.   (Response ¶¶ 3-56, ECF No. 32.)   On that same day, Plaintiff filed an amended Civil Cover Sheet, which attempted to assert additional causes of action and which cited the federal statutes Defendant allegedly violated.   (Corrected Civil Cover Sheet, ECF No. 33; Attachment, ECF No. 33-1.)   On January 21, 2020, Defendant renewed his motion to dismiss Plaintiff's ADA claim for lack of subject-matter jurisdiction and sought to dismiss Plaintiff's additional claims.[4]   *See* Fed. R. Civ. P. 12(b)(1), (6).   (Reply, ECF No. 36.)

---

[2]   Plaintiff's complaint originally named as a defendant Megan J. Brennan in her capacity as Postmaster General; the Court later granted Plaintiff's motion to substitute Louis Dejoy after he became Postmaster General.   (Motion, ECF No. 17; Order, ECF No. 19.)

[3]   Plaintiff previously filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 10, 2018.   (Order at 1, ECF No. 1-5.)   On October 25, 2019, the EEOC entered summary judgment against Plaintiff on all her clams.   (*Id.* at 5-7.)

[4]   To the extent that Plaintiff's Response to the motion is construed as an amended pleading pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), I will address the additional claims asserted by Plaintiff in her Response.   *See Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist. LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) ("[T]he court may consider other filings by a self-represented plaintiff, 'including [the] response to the motion to dismiss, to understand the nature and basis of [her] claims'" (quoting *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003)).

**D**ISCUSSION

### A.    Plaintiff's Claims

Through her complaint and subsequent pleadings, Plaintiff apparently seeks to assert claims pursuant to the following federal statutes: (1) Sections 501, 503, 505, and 508 of the Rehabilitation Act, 29 U.S.C. § 791 et seq.;[5] (2) the ADA, 42 U.S.C. § 12112 et seq.; (3) Title VII, which the Court interprets as a claim arising under 42 U.S.C. § 2000e-16; (4) the Service Contract Act, 41 U.S.C. § 6703; (5) the whistleblower protections of the Fair Labor Standards Act, 29 U.S.C. § 218c, and 15 U.S.C. § 2087(b); (6) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.; (7) the Privacy Act of 1974, 5 U.S.C. § 552a; (8) the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-06; (9) the Architectural Barriers Act, 42 U.S.C. §§ 4151-57; (10) the Contract Disputes Act, 41 U.S.C. §§ 7101-09; (11) the Notification and Federal Employee Antidiscrimination and Retaliation Act ("No FEAR Act"), Pub. L. No. 107-174, 116 Stat. 566 (2002); and (12) the Fourteenth Amendment.  (*See* Complaint at 4; Response ¶¶ 3-56; Corrected Civil Cover Sheet, ECF No. 33; Attachment, ECF No. 33-1.)

### B.    Analysis

Plaintiff has moved to dismiss several claims for lack of subject matter jurisdiction (Federal Rule of Civil Procedure 12(b)(1)) and based on Plaintiff's alleged failure to assert facts to support an actionable claim (Federal Rule of Civil Procedure 12(b)(6)).

---

[5]  Plaintiff has not moved to dismiss Plaintiff's claims arising under the Rehabilitation Act.  (Motion, ECF No. 29; Reply, ECF No. 36.)  Accordingly, the Court will not address the merits of the claims.  Additionally, Plaintiff has stated that she "wishes to remove" the claim asserted in her Complaint arising under section 504 of the Act, 29 U.S.C. § 794.  (Response at 2.)

6

1.      **Rule 12(b)(1) Motion to Dismiss Standard**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramírez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 18 (1st Cir. 2013).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction.  "A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (quotation marks omitted). On such a motion, the court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi*, 620 F.3d at 54.  The court "may also 'consider whatever evidence has been submitted.'" *Id.* (quoting *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)).  The burden of proving subject matter jurisdiction falls to the party invoking the court's jurisdiction. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).

2.      **Rule 12(b)(6) Motion to Dismiss Standard**

A party may seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st

Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In doing so, a court must "assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom," but need not "draw unreasonable inferences or credit bald assertions [or] empty conclusions."  *Id.* (alteration in original) (internal quotation marks omitted); *see Bruns v. Mayhew*, 750 F.3d 61, 71 (1st Cir. 2014) ("[A] court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).  Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'"  *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

"A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Waterman*, 2019 U.S. Dist. LEXIS 191506, at *4 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### 3.      Plaintiff's ADA Claim (42 U.S.C. § 12112)

Defendant contends the Court lacks subject matter jurisdiction over Plaintiff's ADA claims because the ADA exempts the United States from its definition of "employer." (Motion at 2-3.)

"Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019) (quoting 42 U.S.C. § 12101(b)(1)). The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity," includes, in relevant part, an "employer." *Id.* § 12111(2). The ADA, however, excludes from its definition of employer "the United States [or] a corporation wholly owned by the government of the United States. . . ." *Id.* § 12111(5)(B)(i). "'Based on this exclusion, federal courts have concluded that the ADA provides no remedy to federal employees.'" *Field v. Napolitano*, 663 F.3d 505, 510 n.6 (1st Cir. 2011) (quoting *Daniels v. Chertoff*, No. CV 06-2891, 2007 U.S. Dist. LEXIS 28750, 2007 WL 1140401, at *2 (D. Ariz. Apr. 17, 2007)); *see Bartlett v. Dep't of the Treasury (IRS)*, 749 F.3d 1, 5 n.20 (1st Cir. 2014) ("[T]he United States is explicitly excluded from the ADA's definition of 'employer.'").

Plaintiff was employed by the Postal Service and seeks to assert a claim under the ADA against the Postal Service. Because the Postal Service is excluded as an "employer" under the ADA, Plaintiff cannot pursue an ADA claim. *See* 42 U.S.C. § 12111(5)(B)(i);

*Kwatowski v. Runyon*, 917 F. Supp. 877, 882 (D. Mass. 1996) ("The ADA . . . does not apply to employees of the United States Postal Service." (citations omitted)); *see also Enica v. Principi*, 544 F.3d 328, 338 n.11 (1st Cir. 2008) (recognizing that a federal employee asserting a disability discrimination claim "is covered under the Rehabilitation Act and not the ADA"). Plaintiff, therefore, has not asserted an actionable claim within this Court's subject matter jurisdiction.

### 4.    Plaintiff's Service Contract Act Claim (41 U.S.C. § 6703)

Defendant argues that Plaintiff's claim pursuant to the Service Contract Act of 1965 ("SCA") should be dismissed because the SCA does not authorize a private cause of action. (Reply at 4.)

The SCA governs labor conditions for employees under certain service contracts made by the Federal Government. 41 U.S.C. § 6702. The Act "requires that a service contract include provisions specifying the contract's 'wage determination,' which sets the wage rates and fringe benefits that must be paid to various classes of covered service employees." *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1350 (Fed. Cir. 2017); *see* 41 U.S.C. § 6703(1)-(2); 29 C.F.R. § 4.1 *et seq*. The Act also requires that any contracted services are not to be "performed in buildings or surroundings or under working conditions . . . which are unsanitary or hazardous or dangerous to the health or safety of service employees." 41 U.S.C. § 6703(3). The SCA, however, generally has not been interpreted to authorize a private cause of action. *See Ralton v. Collecto, Inc*., No. 14-13184-DJC, 2015 U.S. Dist. LEXIS 24076, at *4 (D. Mass. Feb. 27, 2015) (collecting cases). Rather, "disputes arising under the SCA must be resolved, in the first instance, by the statutory

scheme for administrative relief set forth by Congress in the SCA and administered by the Department of Labor." *C&E Servs. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quotation marks omitted); *see* 41 U.S.C. § 6707 (discussing the Secretary of Labor's "authority to enforce" the SCA, including, in part, the authority to "hold hearings, make decisions based on findings of fact, and take other appropriate action"); 29 C.F.R. § 4.187 (regulating enforcement of the SCA and related administrative proceedings).

Because Plaintiff has not asserted and the record does not otherwise reflect that she initiated administrative enforcement proceedings and obtained a result pursuant to the SCA, Plaintiff cannot assert a claim under the SCA in this Court.

### 5.   Plaintiff's Architectural Barriers Act Claim (42 U.S.C. §§ 4151-57)

Defendant argues that Plaintiff's claim pursuant to the Architectural Barriers Act ("ABA") should be dismissed because the ABA does not provide a private cause of action. (Reply at 6.)

In relevant part, the ABA requires the Postal Service to "prescribe . . . standards for the design, construction, and alteration of its buildings to insure whenever possible that physically handicapped persons will have ready access to, and use of, such buildings." 42 U.S.C. § 4154a.  As this Court has concluded, however, the ABA "provides no direct private right of action against the United States, instead contemplating enforcement through administrative processes of the Architectural and Transportation Barriers Compliance Board ("ATBCB"), with final decisions of that body subject to judicial review." *Gray v. United States*, No. 2:10-cv-467-DBH, 2011 U.S. Dist. LEXIS 127998, at **19-20 (Oct. 31, 2011) (citing 29 U.S.C. §§ 792(b)(1), (e)) (other citation omitted); *see*

*Logan v. Matveevskii*, 175 F. Supp. 3d 209, 232 (S.D.N.Y. 2016) (citing cases that "conclude that a plaintiff cannot bring a private cause of action pursuant to the ABA, at least not without first presenting a claim to the ATBCB").

Even if Plaintiff had alleged facts identifying how the "design, construction, and alteration," 42 U.S.C. § 4154a, of Defendant's buildings restricted her access or use of such buildings, Plaintiff has not asserted that any alleged building deficiencies were first presented to the ATBCB.  Accordingly, Plaintiff has not asserted an actionable claim over which the Court has jurisdiction.

### 5.    Plaintiff's No FEAR Act Claim

Defendant contends that dismissal of Plaintiff's claim is warranted because the No FEAR Act does not provide a private cause of action.  (Reply at 6.)

The No FEAR Act "includes provisions requiring federal agencies to provide additional reimbursement for discrimination cases, to notify and train employees about their rights, and to report on employee complaints against the agency."  *Mallard v. Brennan*, No. 2:14-cv-00342-JAW, 2015 U.S. Dist. LEXIS 58626, at *23 (D. Me. May 5, 2015) (citing No FEAR Act of 2002, §§ 201-302, Pub. L. No. 107-174, 116 Stat. 566, 566 (2002)); *see also* 5 C.F.R. § 724.101 *et seq*.  This Court previously recognized that other courts "uniformly conclude that the NO FEAR Act does not create any private cause of action or substantive rights."  *Mallard*, 2015 U.S. Dist. LEXIS 58468, at **23 & n.7 (citing *Cooper v. Dep't of Army*, No. 4:13-CV-3086, 2013 U.S. Dist. LEXIS 176929, 2013 WL 6631618, at *5 (D. Neb. Dec. 17, 2013) and *Alexidor v. United States Office of Pers. Mgmt.*, No. 13-CV-4027, 2013 U.S. Dist. LEXIS 124082, 2013 WL 4647528, at *2 (E.D.N.Y.

Aug. 29, 2013)); *see also Moore v. Grundmann*, No. 11-cv-1570-GPC-WMC, 2013 U.S.
Dist. LEXIS 71288, at **17-18 (S.D. Cal. May 20, 2013) ("[The No FEAR Act] does not
create a substantive right for which the government must pay damages, but rather, it
requires that federal agencies repay any discrimination or whistleblower damage awards
out of agency funds rather than the General Fund of the Treasury."). Plaintiff, therefore,
cannot assert a claim under the No FEAR Act.

### 6.    Plaintiff's Fair Labor Standards Act Claim (29 U.S.C. § 218c)

The Fair Labor Standards Act ("FSLA") provides, in relevant part, that "[n]o
employer shall discharge or in any manner discriminate against any employee with respect
to his or her compensation, terms, conditions, or other privileges of employment because
the employee (or an individual acting at the request of the employee) has . . . provided . . .
to the employer . . . information relating to any violation of, or any act or omission the
employee reasonably believes to be a violation of, any provision of this title." 29 U.S.C. §
218c(a)(2). The FLSA further provides that "[a]n employee who believes that he or she
has been discharged or otherwise discriminated against by any employer in violation of
this section may seek relief in accordance with the procedures, notifications, burdens of
proof, remedies, and statutes of limitation set forth in [15 U.S.C. §] 2087(b)." *Id.*
§ 218c(b)(1). Section 2087(b), in turn, sets forth whistleblower protections for an
employee "discharged or otherwise discriminated against," requiring that the employee
"not later than 180 days after the date on which such violation occurs, file . . . a complaint
with the Secretary of Labor alleging such discharge or discrimination and identifying the
person responsible for such act." 15 U.S.C. § 2087(b)(1); *see* 29 CFR 1984.103(c)

(requiring that a violation of section 218c be "filed with the OSHA office responsible for enforcement activities in the geographical area where the employee resides or was employed"). The Secretary must then "notify, in writing, the person named in the complaint of the filing of the complaint, of the allegations contained in the complaint, [and] of the substance of evidence supporting the complaint. . . ." *Id.* Following, among other procedural steps, the Secretary's investigation and final decision, *id.* § 2087(b)(2)-(3), "the complainant may bring an action at law or equity for de novo review in the appropriate district court of the United States," *id.* § 2087(b)(4).

Plaintiff's complaint and the record from her hearing before the EEOC do not demonstrate that Plaintiff filed a complaint in accordance with the procedures described in section 2087(b). Accordingly, Plaintiff's claim under the FLSA is not properly before the Court. *See id.* § 2087(b)(4).

### 7.    Plaintiff's Title VII Claim (42 U.S.C. § 2000e-16)

Title VII prohibits employment discrimination of federal employees "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a); *see Rodriguez v. United States*, 852 F.3d 67, 76-77 (1st Cir. 2017) (discussing the application of Title VII to federal employees). Here, Plaintiff alleges discrimination based on her disability, but does not allege discrimination because of Plaintiff's race, color, religion, sex, or national origin. *See Schuett v. Me. Attorney Gen.*, No. 1:14-cv-00375-JDL, 2014 U.S. Dist. LEXIS 143510, at *6 (D. Me. Oct. 8, 2014) ("By Title VII's express terms, disability discrimination is not within the scope of Title VII."). Plaintiff thus has not alleged an actionable claim under Title VII.

14

### 8.      Plaintiff's Federal Tort Claims Act ("FTCA") Claim

"[T]he Postal Reorganization Act says that the Postal Service can 'sue and be sued,' thus generally waiving immunity from suit." *Reyes-Colón v. United States*, 974 F.3d 56, 59 n.2 (1st Cir. 2020) (quoting 39 U.S.C. § 401(1).  The Act also "provides that the FTCA 'shall apply to tort claims arising out of activities of the Postal Service.'" *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006) (quoting 39 U.S.C. § 409(c)).  Under the FTCA, "district courts have jurisdiction over tort claims against the United States 'for personal injury . . . caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of his employment, under circumstances where the United States . . . would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Merlonghi*, 620 F.3d at 54 (alterations in original) (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA further states that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

Neither Plaintiff's complaint nor the exhibits attached to the complaint demonstrate that Plaintiff "first presented the claim" to the Postal Service or otherwise sought to comply with the exhaustion requirements of section 2675(a).  To the extent that Plaintiff seeks to assert a tort claim based on the alleged negligence of postal employees during her employment (Response ¶ 23), therefore, dismissal of the claim is appropriate.  *See Snow v.*

*United States Postal Serv.*, 778 F. Supp. 2d 102, 108 (D. Me. 2011); *see also Vincent v. United States*, No. 2:14-cv-00238-JAW, 2015 U.S. Dist. LEXIS 38025, at \*\*10-11 (D. Me. Mar. 25, 2015).

### 9.   Plaintiff's Privacy Act of 1974 Claim (5 U.S.C. § 552a)

Section 552a of the Privacy Act governs the disclosure of and access to certain records maintained by federal agencies.[6]  5 U.S.C. § 552a(a)-(d).  Although Plaintiff has not cited a particular subsection of § 552a, the Act, in relevant part, requires an agency to permit an individual, "upon request by [the] individual to gain access to his record or to any information pertaining to him which is contained in the system, . . . to review the record."  *Id*. § 552a(d)(1).  Further, the Act requires an agency to "permit the individual to request amendment of a record pertaining to him."  *Id.* § 552a(d)(2).  Any such request must be acknowledged in writing by the agency within ten days of receipt.  *Id.* § 552a(d)(2)(A).  Thereafter, the agency is required to "make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete[] or . . . inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official."  *Id.* § 552a(d)(2)(B)(i)-(ii). When an agency "refuses to comply with an individual request under subsection (d)(1)" or

---

[6]   The Privacy Act defines a "record" as: "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."  5 U.S.C. § 552a(a)(4).

"fails to comply with any other provision of [section 552a]," *id.* § 552a(g)(1)(A), (D), an individual is permitted to bring a civil action against the agency, through which a court may "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him," *id.* § 552a(g)(3)(A).

Plaintiff alleges that she asked for a copy of her employment "review," but the plant manager "wouldn't give [her] a copy."  (Exhibit at 4, ECF No. 1-7; Response ¶ 34, ECF No. 32.)  According to Plaintiff, the plant manager also "alter[ed] the document."  (*Id.*)  At this stage of the proceeding, Plaintiff has alleged an actionable claim pursuant to section 552a(d)(1).

### 10.    Plaintiff's Javits-Wagner-O'Day Act Claim (41 U.S.C. §§ 8501-06)

The Javits-Wagner-O'Day Act established the Committee for Purchase From People Who Are Blind or Severely Disabled, a group that consists of fifteen members appointed by the President.  41 U.S.C. § 8502.  The Committee is required to publish a list of products and services suitable for procurement by the Federal government that are produced or provided "by a qualified nonprofit agency for the blind or by a qualified nonprofit agency for other severely disabled."  *Id.* § 8503(a)(1).  The Committee is also required to "designate a central nonprofit agency . . . to facilitate the distribution . . . of orders of the Federal Government for products and services on the procurement list" and set regulations for the delivery and sale of items on the list.  *Id.* § 8504(c)-(d).

Plaintiff has not alleged any facts related to the Commission or the procurement of goods under the Act and, therefore, has failed to state an actionable claim.

### 11.     Plaintiff's Contract Disputes Act Claim (41 U.S.C. §§ 7101-09)

The Contract Disputes Act "applies to any express or implied contract . . . made by an executive agency for the procurement of property . . . ; the procurement of services; the procurement of construction, alteration, repair, or maintenance of real property; or the disposal of personal property." 41 U.S.C. § 7102(a)(1)-(4).  The Act provides the process by which a contractor may submit a claim against the government "relating to a contract" and requires that a "contracting officer" issue a final decision on any claim submitted.  *Id.* § 7103(a), (d)-(g).

In support of her claim, Plaintiff evidently relies on her allegation that the plant manager made a "misrepresentation of fact" to her, as that term is defined by 41 U.S.C. § 7101(9).  (Response ¶¶ 32-34.)  Plaintiff's allegations, however, do not support a claim under the Act.

### 12.     Plaintiff's Fourteenth Amendment Claim

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV.  By its terms, the Amendment applies to state action and, therefore, does not apply to any alleged actions taken by federal employees.  To the extent that Plaintiff seeks to assert an equal protection claim under the Fifth Amendment, *see González-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 247 n.2 (1st Cir. 2012), Plaintiff's remedy for her discrimination claim based on her alleged disability is found under the Rehabilitation Act.  *See Desroches v. United States Postal Service*, 631 F. Supp. 1375, 1379 (D. N.H. 1986); *see also Spence v. Straw*, No. 92-3713, 1994 U.S. Dist. LEXIS 11485, at **6-7 (E.D. Pa.

Aug. 15, 1994) ("[T]he Rehabilitation Act provides exclusive and preemptive remedies for plaintiffs pursuing handicap discrimination claims against federal agencies.")

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part and deny in part Defendant's motion to dismiss.   I recommend the Court deny Defendant's motion to dismiss Plaintiff's claim arising under the Privacy Act, 5 U.S.C. § 552a, but grant the motion as to the remaining claims.  If the Court adopts the recommendation, Plaintiff would proceed on her claims under the Rehabilitation Act and the Privacy Act.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 26th day of February, 2021.