UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| AMY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00042-JAW |
| | ) | |
| LOUIS DEJOY, Postmaster General | ) | |
| of the United States Postal Service | ) | |
| Defendant. | ) | |

**ORDER ON PENDING MOTIONS TO AMEND**

A plaintiff formerly employed by the United States Postal Service (USPS) brings claims of disability discrimination and related retaliation by her supervisor after she voiced safety and discrimination concerns during her brief tenure as a mail handler during the 2017 holiday season. She now seeks to amend her complaint to add a Title VII sex discrimination claim and a "Performance Rating Act of 1950" claim. The Court denies her request because she has not met the applicable "good cause" standard to amend under Federal Rule of Civil Procedure 16(b), and her proposed claims are futile on the merits.

## I.   BACKGROUND

### A.   Procedural Background

On April 10, 2018, with the assistance of counsel, Ms. Bailey filed an Equal Employment Opportunity Commission (EEOC) Complaint of Discrimination, alleging "Retaliation" and "Disability discrimination," against the United States Postmaster

General (Postmaster General).[1] *Decl. of Leslie Cedola* (ECF No. 65), Attach. 1, *EEO Compl. of Discrimination in the Postal Service* (*EEOC Compl.*).  Ms. Bailey's EEOC Complaint specifically alleged that she has a "memory" disability and checked the form boxes for "Disability" and "Retaliation."  *Id.* at 1.  The EEOC accepted for investigation a total of six events underlying Ms. Bailey's allegations of "discrimination" and "discriminatory harassment/hostile work environment based on Retaliation (Reporting Injury—Safety Concern) and Disability (Cognitive Impairment/Memory)."  *Decl. of Leslie Cedola*, Attach. 3, *Acceptance for Investigation* (*Acceptance for Investigation*); *id.*, Attach. 5, *Acceptance of Amendment* (*Acceptance of Amendment*).  On October 25, 2019, the EEOC entered summary judgment against Ms. Bailey on all her claims.  *Compl.*, Attach. 5, *EEOC Decision and Order Granting Agency's Mots. for Summ. J.*

On February 6, 2020, Ms. Bailey filed a pro se complaint in this Court asserting employment discrimination claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq., against the Postmaster General.  *Compl.* at 1-13 (ECF No. 1).  On December 18, 2020, the Postmaster General answered the Complaint and filed a partial motion to dismiss for lack of subject matter jurisdiction.  *Def.'s Partial Mot. to Dismiss* (ECF No. 29); *Def.'s Answer to Pl.'s Compl.* (ECF No. 30).  On January 8, 2021, Ms. Bailey responded, seeking to amend her Civil Cover Sheet and assert ten additional violations of federal

---

[1]      Plaintiff's complaint before this Court originally named as a defendant Megan J. Brennan in her capacity as Postmaster General.  *See Compl.* (ECF No. 1).  On September 10, 2020, the Magistrate Judge granted Plaintiff's motion to substitute Louis Dejoy after he became Postmaster General.  *Pl.'s Mot. to Amend* at 1 (ECF No. 17); *Order* (ECF No. 19); FED. R. CIV. P. 25(d).

law.  *Pl.'s Resp. to Def.'s Partial Mot. to Dismiss* (ECF No. 32) (*Pl.'s Opp'n to Mot. to Dismiss*); *Corrected Civil Cover Sheet* (ECF No. 33).  On January 21, 2020, the Postmaster General renewed his motion to dismiss Ms. Bailey's ADA claim for lack of subject-matter jurisdiction and sought to dismiss her additional claims.  *Def.'s Reply in Supp. of Def.'s Partial Mot. to Dismiss* (ECF No. 36).

On March 25, 2021, the Court granted in part and denied in part the Postmaster General's partial motion to dismiss, dismissing all counts of Ms. Bailey's Amended Complaint except for those under the Rehabilitation Act and the Privacy Act of 1974.  *Order Affirming the Recommended Decision of the Magistrate Judge* at 3-4 (ECF No. 40); *see also Recommended Decision on Def.'s Mot. to Dismiss* (ECF No. 37) (*Recommended Decision*).

On June 17, 2021, the Postmaster General filed his notice of intent to file a motion for summary judgment on Ms. Bailey's Rehabilitation Act and Privacy Act claims.  *Def.'s Notice of Intent to Move for Summ. J.* (ECF No. 44).  On June 30, 2021, Ms. Bailey emailed the Postmaster General's counsel that she "hope[d] to submit a Rule 15(c) change to include a request for reconsideration of Title VII of the Civil Rights Act of 1964 with supporting document of discrimination based on sex."  *Decl. of Katelyn E. Saner, AUSA* ¶ 5 (ECF No. 66) (*Saner Decl.*); *id.*, Attach. 3, *06/30/21 Emails*, at 1.  Following the parties' July 13, 2021, Local Rule 56(h) Pre-Filing Conference, the Court ordered Ms. Bailey to file any motion to amend her complaint to add additional claims by July 28, 2021.  *Min. Entry* (ECF No. 50).

On July 28, 2021, Ms. Bailey filed a motion for leave to file an amended complaint but failed to attach her proposed amended complaint. *Mot. to Amend Compl. with Proposed Amendment Separate* (ECF No. 52) (*Pl.'s First Mot.*); *id.*, Attach. 1, *Mem. in Supp. of Pl.'s Proposed Mot. for Leave to File Am. Compl.* (*Pl.'s First Mem.*). On August 6, 2020, the Court granted Ms. Bailey leave to file her proposed amended complaint by August 9, 2021. *Pl.'s Req. for Continuance* (ECF No. 58); *Order* (ECF No. 59). On August 9, 2021, Ms. Bailey filed a second motion for leave to file an amended complaint but again failed to attach a proposed amended complaint. *Pl.'s Mot. for Leave to File Am. Compl.* (ECF No. 60) (*Pl.'s Second Mot.*). On August 13, 2021, Ms. Bailey filed her third and final motion for leave to file an amended complaint. *Pl.'s Mot. for Leave to File Am. Compl.* (ECF No. 62) (*Pl.'s Third Mot.*). This time she filed her proposed amended complaint. *Id.*, Attach. 3, *Proposed 3d Am. Compl.* (*Proposed Am. Compl.*). With her proposed third amended complaint, Ms. Bailey seeks to add two claims: (1) a sex discrimination claim pursuant to 42 U.S.C. § 2000e-16, under Title VII of the Civil Rights Act of 1964, and (2) a claim regarding her performance review and dismissal arising under the Performance Rating Act of 1950. *Proposed Am. Compl.* at 2.

On September 3, 2021, the Postmaster General filed his response in opposition to Ms. Bailey's motions for leave to file an amended complaint. *Def.'s Opp'n to Pl.'s Mots. for Leave to File Am. Compl. (ECF Nos. 52, 60, 62)* (ECF No. 67) (*Def.'s Opp'n*). Finally, on September 24, 2021, Ms. Bailey replied to the Postmaster General's opposition to her motions for leave to file an amended complaint. *Pl.'s Resp. to Def.'s*

*Opp'n for Mot. for Leave to File an Am. Compl. (ECF Nos. 52, 60, 62)* (ECF No. 70)
(*Pl.'s Reply*).

### B.   Factual Background

The Court draws the facts from Ms. Bailey's original Complaint and the
attached exhibits.  Additionally, in view of Ms. Bailey's pro se status, the Court
examined her other filings to understand the nature and basis of her claims.[2]  *See
Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist. LEXIS
191506, at *4 (D. Me. Nov. 5, 2019) ("[T]he court must construe [a self-represented
plaintiff's] complaint 'liberally'. . . [and] may consider other filings by a self-
represented plaintiff, 'including his response to the motion to dismiss, to understand
the nature and basis of his claims'" (quoting *Wall v. Dion*, 257 F. Supp. 2d 316, 318
(D. Me. 2003))).

In November of 2017, Amy M. Bailey began working for the USPS at its
Hampden, Maine mail sorting location as a casual seasonal employee.  *Compl.*,
Attach. 4, *Agency Mot. for a Decision Without a H'rg Pursuant to 29 C.F.R. §
1614.109(g)*, at 1.  As a mail handler, Ms. Bailey sorted mail that came through the
facility.  *Id.*, Attach. 3, *Interrogs.*, at 3 (*Interrogs.*).  Ms. Bailey says she has a brain
lesion and dissociative amnesia which "causes short term memory loss" and is
aggravated by stress.  *Interrogs.* at 6; *Compl.*, Attach. 6, *EEOC Designation of
Representation Form*, at 5.  Because of her disability, Ms. Bailey "need[ed] to
sometimes write things down" and occasionally wrote notes on her phone while

---

[2]     For clarity and consistency, the Court refers to docket and page numbers as assigned to Ms.
Bailey's filings by the ECF system.

performing her job. *Interrogs.* at 4, 7. Ms. Bailey alleges she made a request for an accommodation, so she could take notes and refer to them, but that her USPS facility failed to make the accommodation and otherwise claimed she never asked for one or that "all parties 'did' grant accommodation and knew about [her] disability." *Compl.* at 5.

Ms. Bailey's allegations center on the conduct of the Hampden postal plant manager, Brandon Pinkham, who "on many occasions violated protocols and established policies" during her employment. *Id.* Ms. Bailey asserts she was told during her training that she should "tag" any "broken and dangerous equipment" so that it could be removed from the floor and repaired. *Interrogs.* at 1. According to Ms. Bailey, she "tagged" several pieces of equipment, including a "jagged" cage hinge, but Mr. Pinkham removed the tags and discouraged her from raising her safety concerns. *Id.* at 1-2. Ms. Bailey alleges that a full-time employee filed a "union complaint" about the issue but was retaliated against by Mr. Pinkham. *Id.* at 2. She also says that she was retaliated against "for removing a dangerously damaged cage from the floor [and] 'tagging' it." *Pl.'s Opp'n to Mot. to Dismiss* ¶ 39.

Ms. Bailey says that although she was told during her temporary employee onboarding that she would be able to train in other USPS departments, she was "passed up on greater than 7 occasions" for the opportunity to try out other USPS roles. *Interrogs.* at 1. She alleges that other employees were able to conduct this additional training and that of the ten people hired at the same time, she was the only one not trained in other departments. *Id.* Ms. Bailey states that, unlike other

employees, her "work duties were limited to 3 areas." *Pl.'s Opp'n to Mot. to Dismiss* ¶ 50. Ms. Bailey also alleges that Mr. Pinkham would assign only her to a workstation that usually required two employees. *Interrogs.* at 2. She claims that she "was constantly alone" for up to two hours, while other mail handlers worked in groups of two or three. *Id.*

Ms. Bailey asserts that Mr. Pinkham trained her coworker on the use of a scanning device but refused to train her and called her "useless" when she tried to use it and it wasn't working. *Id.*; *Pl.'s Opp'n to Mot. to Dismiss* ¶ 46. She alleges that Mr. Pinkham subjected her to "Quid Pro Quo" harassment, including by assigning her "two to three time[s] the work in the first sorting area at a time of high mail volume," without the assistance of her assigned partner. *Pl.'s First Mem.* at 13. Mr. Pinkham "would come over to throw packages in the wrong [bins and] make disparaging remarks." *Id.* at 14. "It was so egregious that [co-workers] would wait until [Mr. Pinkham] was out of sight and rush to [her] aid." *Id.*

She also alleges that on one instance, Mr. Pinkham threw a package while they were sorting mail and the package struck her in the head. *Interrogs.* at 3. After she was struck, she experienced a "headache and dizziness." *Id.* Ms. Bailey sought to write a report about the incident with one of her other supervisors but was told to wait until it was too late to do so that day. *Id.* at 3-4. She took the following day off and alleges that upon her return to work her "card was pulled." *Id.* at 4. Ms. Bailey claims that she eventually "had no choice but to" file a report with Mr. Pinkham about the incident. *Id.* Ms. Bailey says that Mr. Pinkham "used time alone with [her], both

filling out the accident report and the performance review" to inform her that if she filled out an accident report, talked with the union or "voic[ed] a complaint" then she "would not be hired again." *Pl.'s Opp'n to Mot. to Dismiss* ¶ 40.  She says that any part of Mr. Pinkham's incident report that she signed "was under duress, intimidation, and illegal threat of termination." *Pl.'s First Mem.* at 10.

Around the same time as the package-throwing incident, Mr. Pinkham also conducted Ms. Bailey's temporary worker performance review, in which he commented "unsafe worker, poor performance and attendance." *Pl.'s Second Mot.*, Attach. 7, *Employee Evaluation and/or Probationary Report* at 15; *see Interrogs.* at 4.  Mr. Pinkham cited Ms. Bailey for some absences, which she disputed.  *Interrogs.* at 4.  Ms. Bailey alleges that other employees were not cited for having a similar number of absences, and that "[e]ven the people who had absences and didn't switch shifts were given exemplary in all areas." *Id.*  Ms. Bailey claims that she asked for a copy of her "review," but Mr. Pinkham "wouldn't give [her] a copy" and "alter[ed] the document." *Interrogs.* at 4; *Pl.'s Opp'n to Mot. to Dismiss* ¶ 34.

Ms. Bailey goes on to assert that, after her evaluation, she was told on three different days that there was no work and that she did not have to come to work. *Interrogs.* at 5.  After the third day, she told an administrator at the Hampden plant of the events that occurred "after [she] asked for an accommodation [for her] disability." *Id.*  Ms. Bailey spoke with the administrator about "being discriminated against because of [her] condition and retaliated [against] because of the incident [where she] got hit with a package." *Id.* at 5-6.  Ms. Bailey claims that the

administrator told her that he would speak to Mr. Pinkham about Ms. Bailey returning to her shift and said that "[Mr. Pinkham] shouldn't be throwing packages." *Id.* at 5. Later that same day, Ms. Bailey received a call "an hour after talking with administration" informing her that she was "let go" from her position. *Id.* at 6.

## II.  THE PARTIES' POSITIONS

### A.  Amy Bailey's Motions to Amend

#### 1.  The Applicable Standard

Ms. Bailey submits that her request to add sex discrimination and performance review-related claims complies with the Federal Rule of Civil Procedure 15 standard for amending pleadings as her new claims relate back to her original allegations and "come upon new[ly] discovered evidence not available at the time of the EEOC" or not shared with her by the attorney who represented her in those proceedings. *Pl.'s First Mot.* at 1; *see Compl.*, Attach. 6, *Designation of Representation Form* (designating Sarah Churchill as Ms. Bailey's attorney before the EEOC). She concludes that her "amendment request is only possible from the discovery in these proceedings and concealment of unfair labor practices." *Id.* at 3. She also alleges "knowing concealment," fraud, and obstruction on the part of the USPS in defending this action, suggesting that they knowingly concealed or withheld material information during the EEOC process. *Pl.'s Second Mot.* at 3.

Ms. Bailey insists that her request to amend meets the Rule 15 standard, explaining that her "timing is mainly based on investigation of discovery items; unknown until the middle of June 2021." *Id.* at 1. She urges the Court to grant her

motion in the interests of justice and judicial efficiency, and insists "there would be no undue prejudice, bad faith, undue delay, or futility." *Id.* She acknowledges that she seeks to "amend[] late" but maintains that her delay was "only to complete investigation and attempt to first bring to attention items in dispute to Defense." *Proposed Am. Compl.* at 7.

### 2. Title VII Claim

In addition to disability discrimination, Ms. Bailey now alleges that she was subjected to workplace sexual harassment and discrimination on the basis of her sex. Ms. Bailey asks the Court to consider her pleadings "liberally" and to hold them to a "less stringent standard than formal pleadings drafted by lawyers," reasoning that "Congress intended that Title VII proceedings be navigable by pro se claimants." *Pl.'s First Mot.* at 2. She emphasizes that under Title VII, "a claimant is entitled to a trial de novo in federal court" after exhausting their administrative remedies. *Id.* Ms. Bailey recounts the "procedural requirements for Title VII actions," citing cases for the proposition that her pleadings should be "neither interpreted too technically nor applied too mechanically." *Id.* at 2-3 (quoting *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981)). She asserts that "the jurisdictional bar imposed [by administrative exhaustion requirements] directly conflicts with the statutory and regulatory provisions for judicial access and stands in stark contrast to the agency's cancellation notice which assures claimants of their right to sue." *Id.* at 3. Ms. Bailey reasons that she "could not exhaust all complaints for Title VII, gender-plus [discrimination at her] administrative hearing with the EEOC as [she] only knew the false

statements given by management to the EEOC to cover-up the retaliation and discrimination in late[] June of this year" and notes that "time has passed" for any further administrative remedies for her Title VII discrimination claims. *Id.* at 10.

Ms. Bailey explains that she has "exhibits from evidence originally given to [the Court] from the EEOC investigation and evidence now from discoverable materials" to support her new allegations of Title VII sex discrimination. *Pl.'s Second Mot.* at 2. She insists that she "did make claims in statements during the original filing with EEO[C] and the Court that supervisors favored male co-workers" but "evidence was not forthcoming at that time." *Id.* As to "the second contributing factor to unequal treatment," Ms. Bailey states "[e]xhibits will show [she] was participating in 'protected activities' [of which] supervisors working for the USPS had knowledge and concealed it." *Id.* She says that "[w]ere it not for willful inaction, fraudulent statements, and officials at USPS cover[ing] up the actions of management; EEO[C] would have further investigat[ed] the matter." *Id.* Ms. Bailey identifies her "Target Disability, denial of accommodations for work and the postal exam, denial of training opportunities and further advancement, other unequal standards, harassment, and disparaging treatment" as the "third contributing factor." *Id.*

Ms. Bailey says that a Mail Handlers' Union grievance form in which the local union steward recounted the package throwing incident, complaints about Mr. Pinkham, and other concerns regarding safety on the Hampden USPS workroom floor, provides a new evidentiary basis for amending her complaint. *Pl.'s First Mem.* at 10; *see Saner Decl.*, Attach. 2, *Mail Handlers' Union March 5, 2018 Grievance Form*

(*Grievance Form*).   Ms. Bailey says she "did not know [her] name was physically attached in bold letters to a grievance," only that she "signed a statement, and gave a verbal account of all that occurred." *Pl.'s First Mem.* at 10.  Despite the Postmaster General's insistence otherwise, Ms. Bailey maintains that she "never saw the grievance until June 2021 and all members of [USPS] leadership in their EEOC Affidavit denied it existed." *Id.*

Turning to the merits of her proposed amendment, Ms. Bailey reasons that she meets the requirements of a "prima facie" disparate treatment case under Title VII "Sex-Plus" discrimination, because: "(i) she is a female . . . (ii) She is qualified for the position= U.S. Citizen, GED, an entry level position [and] (iii) She suffered an adverse employment action." *Id.* at 5.  Ms. Bailey says that "[i]n an apple to apple comparison," she will "explain how a male co-worker and female co-workers were treated better than [she was] with physical evidence available in file." *Id.*  She points to:

(a) negative performance review
(b) [being subject to] different job requirement[s than] other candidates
(c) [being] denied training
(d) [being] giv[en] more work without the proper personnel
(e) receiv[ing] negative and unwelcome[] comments
(f) other employees were instructed not to associate with [her]
(h) two employees who did associate with [her] were fired to cover up [her] dismissal and rated as not to retain or hire. . . . Retaliation by association . . .
(j) . . . hostile and toxic work environment
(k) unequal and [disparate] treatment in all work-related activ[ities]

*Id.* Ms. Bailey states that although she "had no issues or complaints, negative comment[s], or harassment" from her main supervisors, she was "treated differently in every aspect of employment" when supervised by Mr. Pinkham. *Id.* at 6.

Ms. Bailey goes on to assert that Title VII "Sex-Plus" discrimination applies to her allegations, explaining that her "protected characteristics are gender-bias plus protected activity (retaliation and adverse employment outcome) and being an individual with a target-disability which created a sub-class, a micro-minority of several protected minority group[s]." *Id.* at 7. Anticipating the Postmaster General's defense that other female workers did not experience the alleged sex discrimination, Ms. Bailey maintains "none of the female casual coworkers[] made a[n] EEOC complaint or participated in a[] Grievance[.]" *Id.* at 9.

She alleges that she was the only casual worker terminated who had "participated in 'protected activity' like a grievance or EEOC proceeding," emphasizing her "target-disability" as documented in her hiring letter and requests for accommodation. *Id.* at 7-8. Ms. Bailey compares her employment experience with that of "B.A.," a male co-worker with similar work experience who she says was assigned to the same position. *Id.* at 8. According to Ms. Bailey, B.A. did not declare any type of disability or participate in grievance or EEOC activity and "had more continuous and notable absenteeism and tardiness." *Id.* at 8. Ms. Bailey also says that B.A. was permitted the training opportunities that Ms. Bailey says she was denied and otherwise given "a weighted and unequal treatment of job requirements." *Id.* at 8-9.

### 3.  The Performance Rating Act Claim

Ms. Bailey also seeks leave to add a claim under the "Performance Rating Act of 1950 for the dispute[d] matter of the PS Form 1750 performance review[.]"  *Pl.'s Third Mot.* at 2.  Ms. Bailey reasons that "there is no different administration from bargaining and non-bargaining employees so standards must be the same" even though she was a short-term causal worker.  *Pl.'s First Mem.* at 11.  She says that USPS "mishand[ed]" her performance review forms, denied her an "initial meeting to go over requirements for review," and refused to give her a copy of her review.  *Id.*

She reasons that the USPS should have considered her status as a new, probationary employee in evaluating her performance, and cites various provisions of the USPS Handbook and USPS evaluation forms to argue that she should have been given at least seven days' notice before being "separated for scheme failure" and that "no recommendation for retaining or separating [her as an employee] should [have] occur[red] before 80 days ha[d] passed."  *Id.* at 12.

She concludes that "[w]hether [she] was found right or wrong, [USPS] cannot retaliate again[st] a protected class participating in 'protected activities.'"  *Id.* at 15-16.  Ms. Bailey submits that "clearly [USPS] Leadership knew [she] was participating in a protected activity and named on the grievance, denied the document existed, yet signed and investigated the occurrence months before."  *Id.* at 15.

### 4.  Amy Bailey's Proposed Amended Complaint

Ms. Bailey's proposed amended complaint asserts "sex discrimination and harassment in all areas previously stated in this complaint as a contributory factor

in all underl[ying] adverse actions." *Proposed Am. Compl.* at 2.  She says "[d]iscovery investigation has given cause to show preference in ratings for job duties, denial of training opportunities, unrequested attention and job assistance, retaliation, and illegal threat of termination, prevention of future opportunities and through comparison [of] PS Form 1750 [she] found that male workers with similar performance [] issues were recommended for rehire and retention efforts, yet [she] was not, nor were they given significantly bad remarks."  *Id.*  Ms. Bailey says she "was the only individual woman worker participating in [a] protected activity in comparison to other female causal workers in the 2017-2018 season."  *Id.*  Ms. Bailey alleges "[f]emale co-workers were also treated more favorably if they did not report safety violations [n]or were party to a grievance."  *Id.* at 4.  She insists that "[o]ther female and male coworkers did not receive unwanted attention, different work assignments, or increased workload" as she did from Mr. Pinkham.  *Id.*

Ms. Bailey says she was "told she would be fired and/or not rehired for being unsafe" although it was Mr. Pinkham who was unsafe and throwing packages, concluding that "[t]hrough intimidation, [she] felt harassed and a victim of 'quid pro quo sexual harassment.'"  *Id.* at 5.  She alleges that Mr. Pinkham "put false information in his supervisor report," and says that although he "admitted to [her] at the time of the accident report and [at] the EEOC [] proceedings that he was throwing (tossing) packages [on] December 18th, 2017, [he omitted] that information . . . in grievance or other workplace forms."  *Id.*

15

Ms. Bailey's proposed amended complaint invokes the "Performance Rating Act of 1950 5:4303 for adverse actions taken before, at, and after the administration of the PS Form 1750 review." *Id.* at 2. She alleges that she was "never informed there was going to be a performance review until a few days before the review, when 30 days is required." *Id.* at 5. Ms. Bailey says that although USPS owed her "seven-day[s] notice for termination for poor performance," her "review date was December 26, 2017 and [her] termination December 28, 2017," only hours after she "verbally complain[ed] to personnel about several problems." *Id.* at 6. She says that the Postmaster General failed "to meet administrative process[es]," and insists "the other two supervisor[s] that supervised [her] for two-thirds of each shift made no mention of bad behavior, absenteeism, or poor performance." *Id.* at 2, 5-6.

She submits that Mr. Pinkham "announced days before that he was not going to do the performance reviews" for the new casual workers, but then used her review to "retaliate and harass[]" Ms. Bailey once he learned about her grievance, which she says he mentioned before she exited her performance review meeting. *Id.* at 6. Finally, Ms. Bailey says that "Mr. Pinkham also made false claims of plaintiff as a poor performer, having attendance issues, or being an unsafe worker" in her performance review. *Id.*

## B. The Postmaster General's Opposition

The Postmaster General submits that the applicable standard for amending a complaint after the expiration of the time permitted in the scheduling order is not found in Rule 15, as cited by Ms. Bailey, but in Federal Rule of Civil Procedure 16(b).

*Def.'s Opp'n* at 5-6.  The Postmaster General urges that because Ms. Bailey filed her first motion to amend on July 28, 2021, *see Pl.'s First Mot.*, "more than four months after the parties' March 5, 2021 deadline to amend pleadings and join parties," Rule 16(b)'s "more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." *Def.'s Opp'n* at 6 (quoting *O'Brien v. Town of Bellingham*, 943 F.3d 514, 527 (1st Cir. 2019)).[3]  According to the Postmaster General, Ms. Bailey cannot show "good cause" because this standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

Next, the Postmaster General reasons that Ms. Bailey's proposed amendment should be barred as futile because her complaint as amended could not survive a motion to dismiss. *Id.* at 7, 11.  First, he argues that her request "filed after the close of discovery and after Defendant's notice of intent to seek summary judgment . . . is unduly delayed." *Id.* at 8.  The Postmaster General says that Ms. Bailey's explanation that she needed further investigation before bringing her sex discrimination claim "diminishes the purpose of discovery and scheduling orders." *Id.*  He insists that "there has been no material change in the facts . . . since [Ms. Bailey] filed her original complaint in February 2020." *Id.*

---

[3]     The Postmaster General argues that because Ms. Bailey failed to file a proposed amended complaint with her first or second motions to amend, he "is without sufficient notice to assess the viability of any asserted claims" in those motions. *Def.'s Opp'n* at 7.  He insists Ms. Bailey's first and second motions to amend "should be denied for lack of a proposed amended complaint, and further as being superseded by Plaintiff's Third Motion to Amend." *Id.*  Considering Ms. Bailey's pro se status, the Court granted her multiple opportunities to file a proposed amended complaint and reviews all three of her related motions here.

Regarding the March 5, 2018 grievance form that Ms. Bailey says supports her new claims but was not revealed to her until June of 2021, the Postmaster General says the "grievance was included in the administrative record at the EEO[C] level" and again provided to Ms. Bailey and marked as an exhibit at her deposition in March of 2021. *Id.* Even if Ms. Bailey learned of the grievance letter late, the Postmaster General argues that it is solely safety related and "lacks any inference of sex discrimination or retaliation" and thus does not provide good cause to allow Ms. Bailey to amend her complaint to add a Title VII claim. *Id.* at 9. Regarding Ms. Bailey's challenge to "the timing of [her] performance evaluation and her rating," the Postmaster General contends that she "does not explain why she could not add this claim at the outset of this litigation," particularly as her original complaint reflected her dissatisfaction "with her performance evaluation as early as 17 months ago" and even before her 2019 EEOC proceedings. *Id.*

The Postmaster General points out that Ms. Bailey already amended her complaint once and "also knew how to and, in fact, did move to amend the scheduling order" for more time to review discovery materials. *Id.* He says that "[i]nstead of adding her new claims with her prior amendment in January 2021 or when she sought extension of the scheduling order in May 2021, Plaintiff waited until June 30, 2021, after [he] had filed [his] notice of intent to seek summary judgment" to seek reconsideration of her Title VII discrimination claim, and until July 28, 2021 "after [he] had filed [his] Rule 56(h) pre-filing conference memorandum to add [her] novel theory" of sex discrimination and a Performance Rating Act claim. *Id.* at 9-10. He

18

submits that "[t]his protracted delay, standing alone, is reason enough to deny Plaintiff's amendment request." *Id.* at 10. The Postmaster General urges the Court that granting the motion to amend would "unduly prejudice him" with "a do-over of discovery." *Id.* "In sum, even if viewed in the context of Rule 15(a)(2), [Ms. Bailey's] unduly delayed and prejudicial request to amend her pleading should be denied." *Id.*

Next, the Postmaster General asserts that Ms. Bailey's Title VII claim "is futile" because she did not file an administrative complaint alleging sexual harassment or any other form of sex-based discrimination to exhaust her administrative remedies prior to bringing suit. *Id.* at 10-11. He recounts that federal employees must timely exhaust their administrative remedies through EEOC proceedings and a complaint with their agency. *Id.* at 11. The Postmaster General states that "the fact that an employee had filed an EEO[C] complaint 'does not open the courthouse door to all claims of discrimination,'" emphasizing that an eventual suit in federal court will be "constrained by the allegations made in the administrative complaint." *Id.* at 12-13 (quoting *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 71 (1st Cir. 2011) ("[The] purpose [of administrative exhaustion] [is] frustrated if the employee [is] permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action")).

He asserts that Ms. Bailey's proposed amended complaint "adds a wholly new theory of discrimination (based on sex) which she never alleged in her administrative proceeding . . . nor which is reasonably related to the allegations" she did raise before the EEOC, reasoning that "[c]laims of 'ideologically distinct categories' of

19

discrimination and retaliation are not 'related' [for the purposes of administrative exhaustion] simply because they arise out of the same incident." *Id.* at 12-13. The Postmaster General insists that because Ms. Bailey only checked the EEOC complaint boxes for "Disability" and "Retaliation," her "administrative complaint did not put [him] on notice that [Ms. Bailey] was pursuing a sex discrimination claim." *Id.* at 13. According to the Postmaster General, Ms. Bailey's "request to now add a Title VII sex-discrimination claim to her federal lawsuit is a quintessential example of [a] plaintiff seeking to 'allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action,' . . . [which] would frustrate Title VII's exhaustion requirement." *Id.* at 14 (quoting *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996)).

The Postmaster General goes on to urge that, even with her claimed "new" evidence, Ms. Bailey "does not, and cannot, meet her heavy burden to establish that the facts or equities favor equitable waiver, estoppel, or tolling of the administrative exhaustion requirement." *Id.* Ms. Bailey highlights the March 5, 2018 grievance and Mr. Pinkham's EEOC statements as providing previously unavailable support for her new claims. *See Am. Compl.* at 4-5. The Postmaster General disagrees, saying that the grievance is limited to union safety concerns at the Hampden postal plant and "does not unearth a new theory of sex-discrimination or retaliation for opposing sex-based discrimination previously unknown to Plaintiff, and thus does not permit any basis to establish that any of the equitable exceptions to Title VII's requisite exhaustion requirements are warranted." *Def.'s Opp'n* at 15.

20

Finally, the Postmaster General argues that Ms. Bailey's proposed Performance Rating Act claim is futile. *Id.* at 16. He contends that Ms. Bailey "does not provide a statutory citation" specifying "what provisions of the Performance Rating Act of 1950 she believes have been violated." *Id.* He asserts that she otherwise fails to state a claim for relief with her allegations that she "'was not given 30-days' notice prior to her December 26, 2017 performance evaluation, . . . [when] MDO Pinkham issued [her] evaluation to 'retaliat[e] and harass[]' [her] after Pinkham 'learn[ed] about the grievance [she] was participating in,' and because Plaintiff's temporary appointment was terminated less than 7 days after her performance evaluation." *Id.* (quoting *Pl.'s Third Mot.*). The Postmaster General concludes that Ms. Bailey's proposed Performance Rating Act claim "lack[s] specificity" and "warrant[s] dismissal on that basis." *Id.* at 16.

Next, "to the extent [Ms. Bailey's Performance Rating Act claim] could plausibly be construed as arising under Chapter 43 of the Civil Service Reform Act of 1978" (CSRA), the Postmaster General says her "allegations about timing and her disagreement with the evaluation do not state a claim for relief under any provision of Chapter 43, which governs the process for removing a federal employee based on unacceptable job performance." *Id.* at 17. He contends that "in any event," Ms. Bailey, as a temporary USPS employee who worked for less than a month in 2017, has "no redress under Chapter 43 because the statute does not create a cause of action . . . for 'employees in the excepted service who ha[ve] not completed 1 year of current

21

continuous employment in the same or similar positions.'"  *Id.* (quoting 5 U.S.C. §4303(f)(3)).

Finally, the Postmaster General submits that "even if Plaintiff had redress [under Chapter 43] and had pled a claim of termination based on 'unacceptable performance,'" her allegations cannot survive a motion to dismiss because Ms. Bailey did not exhaust her administrative remedies as to any review or termination-related claims.  The Postmaster General explains that Chapter 43 falls within the CSRA's "integrated scheme of administrative and judicial review," which requires exhaustion as a jurisdictional prerequisite to suit.  *Id.*  As Ms. Bailey "does not plead or otherwise submit documentation that she first adjudicated her claim with the [Merit Systems Protection Board]," her motion to amend her complaint to add a Performance Rating Claim "should be denied as futile."  *Id.* at 18-19.  The Postmaster General submits that Ms. Bailey is unable to meet her Rule 16 burden to show good cause to add claims for Title VII sex discrimination and a violation of the Performance Rating Act of 1950.  *Id.* at 8.

### C.    Amy Bailey's Reply

In response to the Postmaster General's timeliness arguments, Ms. Bailey submits that she "has shown good faith through these proceeding[s]."  *Pl.'s Reply* at 4.  She says she requested additional time for discovery only when necessary, "[e]ven if [she] did not understand that discovery ends 30 days before the deadline."  *Id.*  Ms. Bailey says she "did not understand the end of discovery was not June 11" and "[h]ad she understood the nature of discovery, [she] would have asked for more time."  *Id.*

at 6-7.  She explains that she is "learning about procedures and rules, human error[s] and misunderstand[ing]s happen."  *Id.* at 4.

As to her failure to attach a proposed complaint to her first and second motions to amend, Ms. Bailey "having no formal legal experience does not know why the first attempts to amend were not acceptable."  *Id.* at 10.  She attributes her confusion to the District's page limit requirements and maintains that her filings should have been acceptable as submitted.  *Id.*

Ms. Bailey argues that "the [Rule 16(b)] standard of 'good cause' is clearly met with the extenuating circumstances" in her case, particularly as "it is the perspective of Plaintiff that she had not seen [the grievance] document before the above noted dates," the "wrong [discovery] CD was sent in March," and moreover she had "great difficulty accessing the documents without the use of assisted technology or the ability to print off documents."  *Id.* at 10-11.  She maintains that "[t]he evidence found is significant" as it "shows fraud and conspiracy to commit fraud," and her "disability (memory) along with indicators of willful malice establish 'good cause.'"  *Id.* at 12.

Regarding her proposed Title VII claim, Ms. Bailey argues that the EEOC Complaint, on which she failed to check sex discrimination and harassment, is "an irrelevant document to these proceedings" as it was submitted "in a different venue with different proceeding[s] and different actors."  *Id.* at 2.  She reasons that she did not specifically invoke the Rehabilitation Act or the Privacy Act before the EEOC, and yet is allowed to pursue those claims now before this Court.  *Id.* at 16-17.  She insists that she "<u>did</u> mention preference, abuse, and behavior in prior filing[s] with

EEO[C], though [she] did not allege Title VII violations of sex discrimination" and that "harassment [h]as been stat[ed] in many [court] filing[s], [and] in EEOC filings." *Id.* at 2-3 (emphasis in original).

Ms. Bailey also contends that she could not express her Title VII allegations earlier because she "could not prove without discovery sex discrimination and [she] assumed in vain that [her EEO] attorney would perform a through discovery and find evidence." *Id.* at 3-4. She explains that she "did not review the discovery documents at the EEOC" due to the "cognitive impairment caused by stress and mistreatment." *Id.* She submits that "[i]f this matter is review[ed] de novo . . . an incomplete form in another venue should have no bearing." *Id.* at 3. She also says her sex discrimination claim is not futile because "[i]n this case there are 10 prime examples [of comparable employees], with [stark] comparisons against the treatment suffered by Plaintiff over 30 days." *Id.* at 12.

Citing her "preponderance of the evidence burden," Ms. Bailey says that her request to amend is supported by newly discovered "documents that show clear bias and causation." *Id.* at 5. She argues that the Postmaster General "did not give a substantial portion of discovery" and initially sent her the wrong discovery disk and explains that she had difficulty accessing encrypted discovery materials with the assistive technology that she relies on to read documents. *Id.* at 6. Ms. Bailey says that both parties realized that discovery was missing on June 15, 2021, and that she did not know of or see the grievance form until June 16. *Id.* at 8. She says that the Postmaster General filed his notice of summary judgment "with full knowledge that

[she] had been denied full access to discovery" and was missing "around 1600 pages of documents." *Id.* at 9. Ms. Bailey disagrees that allowing her to amend her complaint would amount to a discovery "do-over," reasoning that "justice sometime[s] has to be patient" and new "evidence proves [she] was wronged and denied justice at the last [EEOC] proceeding." *Id.* at 16.

She goes on to say that during discovery she "discovered a document that in [her] perspective was not present or reviewed by the EEOC" and that, according to Ms. Bailey, Mr. Pinkham claims did not exist, "[c]ontradicting her statement that [she] had filed a grievance and [] participated in protected activities before [her] termination." *Id.* at 6. This evidence, Ms. Bailey argues, shows "fraud was commit[ted] in the EEOC process," via false statements and "a conspiracy to conceal the treatment and wrongdoing" among USPS supervisors and higher management. *Id.* Ms. Bailey asserts that the employment documents that she received during discovery contained different information from the originals, alleging that "USPS omitted information from the employee file that went to the EEOC (altering the files) to prove their point that no one's disability preference was recorded or asked." *Id.* at 7.

Regarding her proposed Performance Rating Act of 1950 claim, Ms. Bailey says that she would have added it initially "had [she] known the law even existed at the beginning of the claim." *Id.* at 14. She argues that "[t]his law directly effects the manner and handling of all Performance Ratings for the federal government" and thus applies to the Performance Review used to "abuse, punish, and retaliate" against

her. *Id.* She urges the Court to allow her claim, "brought in good faith, for a noble cause" in the name of justice, despite the Postmaster General's assertion that she is categorically ineligible for performance review protections. *Id.*

She argues that administrative exhaustion requirements should not bar her new claims because she "contacted EEOC" where "there [was] no redress" and "discovery was not even complete," thus the matter "must be settled in this venue." *Id.* at 16. She insists that the "Court should accept this matter" because "if Title VII was alleged in any other venue it would be allowed to be adjudicated here" and "[a]ll the describe[d] treatment can be equally categorized as sex discrimination." *Id.* She urges the Court to "consider when deciding the Title VII sex discrimination" whether anything she "reported then (at EEOC), or now fall[s] under the USPS guideline of 'quid pro quo.'" *Id.* at 17 (citing the USPS Employee Handbook definition of "What Harassment Is").

Ms. Bailey says that after she "refused Mr. Pinkham's request not to fill out the accident report," he "threatened termination" in response, and then "retaliated when he learned [she] filed a grievance for the illicit behavior." *Id.* at 18. She urges that "[t]his is a form of sexual harassment to use one['s] power and authority to compel them to your will and if they refuse[,] you punish them with an overreach of authority." *Id.* According to Ms. Bailey, "Pinkham did not alter any other female employees['] jobs" or "cause more work in their areas," and "[n]o other female employee complained or confirmed similar circumstances when asked." *Id.*

26

Ms. Bailey disputes the Postmaster General's contention that she "had knowledge of the [EEOC complaint file] documents long before [her] June 2021 [] email and phone discussion with Defense." *Id.* at 2. She suggests that her EEOC attorney misled the EEOC officers and told her "under false pretense that there was nothing more to be done except file in Federal Court with leave from the EEOC." *Id.* She reasons that the Postmaster General "constantly bases assumption[s] on the ruling in [his] favor from the EEOC commission." *Id.*

Ms. Bailey attaches to her reply an internal USPS bulletin on workplace harassment, to suggest that "USPS in their own statements confirm the behavior was considered harassing." *Id.* at 3. Ms. Bailey urges the Court to grant her request to amend her complaint, as "the evidence and comparison of evidence show cause, as well as extenuating circumstances" and "[f]raud has no time limits." *Id.* at 19. She emphasizes her challenges as a pro se litigant, concluding that her claims "should be decided on the merits and not on technicalities." *Id.*

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading "only with the opposing party's written consent or the court's leave" once the time to amend "as a matter of course" has passed. FED. R. CIV. P. 15(a)(2) (explaining that "[t]he court should freely give leave [to amend] when justice so requires"). "[W]hen a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order . . . Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." *O'Brien*, 943 F.3d at 527 (internal quotations omitted) (citing

FED. R. CIV. P. 16(b)(4); *United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015)). The First Circuit has recognized that district court judges have "'great latitude' over case-management functions under Rule 16(b)." *Id.* at 528 (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993)).

"[A]s a general rule, [courts] are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating that pro se complaints are "to be liberally construed" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). "However, pro se status does not insulate a party from complying with substantive and procedural law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). "The Court must deny a motion to amend as futile if the 'complaint, as amended, could not withstand a motion to dismiss.'" *Fannie Mae v. Wilson*, No. 2:18-cv-00366-JAW, 2019 U.S. Dist. LEXIS 72293, *7 (D. Me. Apr. 30, 2019) (quoting *Shannon v. Houlton Band of Maliseet Indians*, 54 F. Supp. 2d 35, 38 (D. Me. 1999)).

## IV. DISCUSSION

Ms. Bailey filed her motions to amend on July 28, 2021, August 9, 2021, and August 13, 2021, several months after the scheduling order deadline. *See Scheduling Order* (ECF No. 31) ("Deadline for Amendment of the Pleadings and Joinder of Parties: March 5, 2021"). Thus, Rule 16(b)'s "good cause" standard applies to her

request, rather than Rule 15(a)'s "freely given" standard.  *See O'Brien*, 943 F.3d at 527.

Ms. Bailey has not established good cause to amend her complaint to add a sex-discrimination claim under Title VII or a claim under the "Performance Rating Act of 1950."  She failed to raise any sex-related allegations before the EEOC in order to exhaust her Title VII administrative remedies, and her claim is not reasonably related to the allegations that she did raise before the EEOC nor excused based on new discovery revelations.  She also fails to establish good cause to add a "Performance Rating Act of 1950" claim because she does not fall within the category of workers protected by the modern equivalent of that Act, Chapter 43 of the Civil Service Reform Act of 1978.  Ms. Bailey's tenure with the USPS as a short-term casual worker during the 2017 holiday season does not constitute "1 year of current continuous employment" required to qualify for relief under Chapter 43.  5 U.S.C. § 4303 (f)(3).  Moreover, Chapter 43 requires exhaustion of administrative remedies as a jurisdictional prerequisite to suit so as to bar Ms. Bailey from raising performance review related claims for the first time before this Court.

### A.    Amy Bailey's Delay in Seeking Leave to Amend

Ms. Bailey says that she waited to raise her additional claims because she needed time to investigate new discovery materials.  She specifically insists that she did not know about a Mail Handlers Union March 5, 2018 grievance form until June 2021, and that that document provides new support for her proposed amendment. *Pl.'s Second Mot.* at 1.  The Court disagrees.

29

First, because Rule 16(b)'s good cause standard focuses on the diligence of the moving party, her argument for modifying the Court's Scheduling Order deadline would have been stronger immediately after June 16, 2021 when she says she first discovered the grievance form. *Pl.'s Reply* at 8 ("June 16, 2021 I found and saw the Grievance worksheet USPS_000264.pdf"). Upon discovering the grievance form she could have immediately made a motion under Rule 16(b)(4) to extend the Scheduling Order's deadline for pleading amendments. *See Somascan, Inc. v. Philips Med. Sys. Nederland*, B.V., 714 F.3d 62, 64 (1st Cir. 2013) ("[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend") (quoting *Steir*, 383 F.3d at 12). Instead, she waited until July 28, 2021, after the Postmaster General had filed a Local Rule 56(h) memorandum, after she had filed a Local Rule 56(h) memorandum, and after the Court had scheduled a Local Rule 56(h) conference for July 13, 2021. Ms. Bailey first raised the issue of filing an amended complaint at the Rule 56(h) conference on July 13, 2021, but did not file the motion to amend until July 28, 2021 and did not successfully file a proper motion until August 13, 2021, about two months after she says she discovered the grievance worksheet.

Second, on the Court's review of the record, this form was part of the EEOC investigation, and Ms. Bailey was questioned about it at her March 2021 deposition. *Saner Decl.*, Attach. 1, *Dep. Tr.*, at 160:17-161:9; *Grievance Form*; *see Trans-Spec Truck Serv., Inc v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) (affirming the

district court's refusal to find good cause to amend where the allegations the plaintiff "[sought] to add to its amended complaint [were] based on information that [it] had or should have had from the outset of the case").

Finally, this form does not suggest sex discrimination or retaliation, and thus does not provide the requisite good cause to allow Ms. Bailey to add a Title VII claim despite her delay. *See Grievance Form*.

Regarding her Performance Rating Act claim, Ms. Bailey has similarly failed to demonstrate good cause for leave to amend at this stage in the litigation. The EEOC accepted Ms. Bailey's "unacceptable performance rating on PS Form 1750, Employee Evaluation and/or Probationary Report" as a subject of its investigation and Ms. Bailey also challenged her USPS performance review in her Complaint in this suit. *See Acceptance for Investigation* at 2-3; *Compl.* at 5 (asking the Court to grant relief in the form of having "the p[er]formance review removed from file" and her "banned from rehireable status lifted"). As the Postmaster General points out, Ms. Bailey already amended her complaint once on January 8, 2021, before the scheduling order deadline but did not take that opportunity to add this related cause of action then. *See Pl.'s Opp'n to Def.'s Mot. to Dismiss* at 2; *Corrected Civil Cover Sheet*.

Although the Court is sympathetic to Ms. Bailey's challenges in navigating the discovery process as a pro se party and does not doubt her "good faith through these proceeding[s]," *Pl.'s Reply* at 4, her sincerity and conviction in her claims cannot provide the good cause required under Rule 16(b). Moreover, even if Ms. Bailey had

good cause to add her sex discrimination and Performance Rating Act claims now after the close of discovery, both claims are otherwise futile on the merits.

## B.   Amy Bailey's Title VII Sex Discrimination Claim

### 1.  Legal Standard

First, administrative exhaustion under Title VII requires "the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency" before a plaintiff may file a complaint in federal court. *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). To determine whether a plaintiff has met the exhaustion requirement, "a district court [may] to look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation but still fall within the parameters of the original administrative charge." *Thornton v. UPS, Inc.*, 587 F.3d 27, 32 (1st Cir. 2009). "The formal administrative complaint is 'both a prerequisite for entry into federal court and a scope-setting device for the civil action that follows' under Title VII and relevant regulations." *Spinney v. Spencer*, No. 2:15-cv-459-NT, 2017 U.S. Dist. LEXIS 158746, at *4-5 (D. Me. Sept. 27, 2017) (quoting *Brown v. Mabus*, No. 2:14-cv-426-NT, 2016 U.S. Dist. LEXIS 142509, at *2 (D. Me. Oct. 14, 2016)).

This District has noted that "factors informing the scope of the civil complaint include 'whether the agency did in fact investigate the alternative grounds at issue,' 'whether the factual statements in the plaintiff's complaint should have alerted the agency of an alternative claim,' and whether it was 'clear that the charging party intended the agency to investigate the allegations.'" *Spinney*, 2017 U.S. Dist. LEXIS

158746, at *6 (quoting *Caldwell v. Fed. Express Corp.*, 908 F. Supp. 29, 35-36 (D. Me. 1995)).   The First Circuit has cautioned that district courts are not to "provide a plaintiff with an unlimited license to extend his claim endlessly beyond the bounds and parameters encompassed by the administrative charge" so as to "nullify" the administrative exhaustion requirement.  *Thornton*, 587 F.3d at 32.

### 2. Analysis

Ms. Bailey failed to exhaust her administrative remedies regarding her Title VII sex-based discrimination allegations, thus her proposed sex-based discrimination claim is barred and futile.

When Ms. Bailey invoked Title VII in her opposition to the Postmaster General's motion to dismiss her complaint as a source of relief for her allegations of disability discrimination, *Pl.'s Resp. to Def.'s Partial Mot. to Dismiss* at 2, the Court affirmed the Magistrate Judge's finding that Ms. Bailey had not alleged an actionable Title VII claim.  *Recommended Decision* at 14 ("Plaintiff alleges discrimination based on her disability, but does not allege discrimination because of Plaintiff's race, color, religion, sex, or national origin") (citing *Schuett v. Me. Att'y Gen.*, No. 1:14-cv-00375-JDL, 2014 U.S. Dist. LEXIS 143510, at *6 (D. Me. Oct. 8, 2014) ("By Title VII's express terms, disability discrimination is not within the scope of Title VII")).  Neither Ms. Bailey's original Complaint nor her January 8, 2020 request to add additional claims under Title VII and other sources of federal law made any reference to her sex or any sex-related discrimination or retaliation.  *See id.*  Ms. Bailey's filings before

and during discovery in this case did not contain any facts that could put the Postmaster General on notice of a sex discrimination claim.

More importantly for the exhaustion issue, in the earlier administrative proceedings, Ms. Bailey did not allege and the EEOC did not investigate any sex-related allegations. *See Compl.*, Attach. 5, *Decision and Order Granting Agency's Mots. for Summ. J.*; *Pl.'s Second Mot.*, Attach. 8, *EEO Investigative Aff., Supervisor*; *Pl.'s First Mot.*, Attach. 6, *EEO Investigative Aff., Witness.* Based on Ms. Bailey's EEOC filings, which made no reference to any sex-related discrimination or her sex at all, a "reasonable investigation" of her administrative charge would involve her disability accommodations, evidence of disability-based animus, and evidence of retaliation after she reported her "injury and safety concerns." *See EEOC Compl.*; *Decl. of Leslie Cedola*, Attach. 2, *EEO Alternative Dispute Resolution Specialist's (ADRS) Inquiry Report*; *id.*, Attach. 4, *EEO Investigative Aff.*; *id.*, Attach. 6, *EEO Investigative Report*; *Acceptance for Investigation*; *Acceptance of Amendment*; *see also Spinney*, 2017 U.S. Dist. LEXIS 158746, at *6. As the Postmaster General argues, allowing Ms. Bailey to add a sex-based claim now would frustrate the Title VII scheme of administrative review and could require "a do-over of discovery," without prior notice, on Ms. Bailey's sex-discrimination theory. *Def.'s Opp'n* at 10.

As Ms. Bailey did not allege sex-based discrimination in her EEOC complaint or otherwise reference sex discrimination in her related filings or narrative of the underlying events, she cannot now "attempt to piggyback a non-existent Title VII filing" on her disability-based EEOC filing to evade exhaustion requirements.

34

*Saunders v. McDonough*, No. 21-10106-MBB, 2021 U.S. Dist. LEXIS 199883, *14 (D. Mass. Oct. 18, 2021) (quoting *Jorge*, 404 F.3d at 565); *see Jorge*, 404 F.3d at 565 (explaining that a Title VII suit filed following EEOC proceedings "must bear some close relation to the allegations presented to the agency").  The EEOC accepted for investigation Ms. Bailey's allegations of "discrimination based on Retaliation (Reporting Injury – Safety Concern) and Disability (Cognitive Impairment/Memory)" and her amended allegation of "discriminatory harassment/hostile work environment based on Retaliation (Reporting Injury – Safety Concern) and Disability (Cognitive Impairment/Memory)." *Acceptance for Investigation*; *Acceptance of Amendment*.  Ms. Bailey's EEOC filings did not put the Postmaster General on notice of a sex discrimination claim, and she did not amend her EEOC complaint to suggest any such claim.  *See EEOC Compl.* (leaving the box for "Sex" discrimination unchecked).

Ms. Bailey insists that evidence of sex-related discrimination would have been uncovered before the EEOC, but-for misconduct on the part of her attorney and the USPS.  However, the March 5, 2018 union grievance form that Ms. Bailey points to does not unearth a new theory of sex-discrimination, expose previously unknown retaliation for opposing sex-based discrimination, or otherwise raise new Title VII protected activity.  *See Grievance Form*.  It thus does not provide any basis to establish an equitable exception to Title VII's exhaustion requirements.  *See Galouch v. Me. Dep't of Pro. & Fin. Regul.*, 856 F. Supp. 2d 244, 251 (D. Me. 2012) (explaining that because a union grievance has to "relate to a practice made unlawful by Title VII" to constitute protected activity, plaintiff's failure to "allege[] that she opposed

any employment practice made unlawful by Title VII or participated in any matter in an investigation or proceeding under Title VII" barred her claim).

### C.    Ms. Bailey's Performance Rating Act of 1950 Claim

#### 1.  Legal Standard

In 1978, Congress replaced the Performance Rating Act of 1950 with the Civil Service Reform Act, which was designed to "continue a system that would assure that competent employees would be retained and unsatisfactory employees removed from their positions, while keeping to a minimum the need for protracted administrative and judicial intervention resulting from inadequate standards or appraisals." *Wilson v. Dept. of Health & Hum. Servs.*, 770 F.2d 1048, 1051 (Fed. Cir. 1985).  In light of Ms. Bailey's pro se status, the Court will construe her Performance Rating Act allegations under the applicable provision of the CSRA, Chapter 43.  Chapter 43 requires federal agencies to comply with procedural requirements before they may reduce in grade or remove certain employees for "unacceptable performance."  5 U.S.C. § 4303.

#### 2.  Analysis

Even construed under the correct statutory scheme, Ms. Bailey's performance review allegations fail to state a plausible claim for relief.  USPS' temporary "casual" workers, such as Ms. Bailey, are expressly exempt from Chapter 43's procedural protections.  *See* USPS Employee and Labor Relations Manual 432.12, *General Definitions and Provisions, Supplemental Work Force,* https://about.usps.com/manuals/elm/html/elmc4_013.htm (defining casual employees

as "noncareer employees with limited term appointments used as a supplemental work force").

Chapter 43's notice requirement does not apply to "the reduction in grade or removal of an employee in the excepted service who has not completed 1 year of current continuous employment in the same or similar positions." 5 U.S.C. § 4303 (f)(3). Furthermore, the USPS is an executive agency in the excepted service. *See Mouton-Miller v. Merit Sys. Prot. Bd.*, 985 F.3d 864, 867 (Fed. Cir. 2021) ("All positions in the Postal Service fall within the excepted service."); *see also* 5 U.S.C. § 2102(a)(1)(A) ("The 'competitive service' consists of—all civil service positions in the executive branch, except . . . positions which are specifically excepted from the competitive service by or under statute"); 39 U.S.C. § 201 (the USPS is "an independent establishment of the executive branch"); 39 U.S.C. § 1006 (USPS employees serve under excepted appointments).

Ms. Bailey claims that she was entitled to thirty days' advance written notice prior to her adverse employment action, however Ms. Bailey herself, in her first motion to amend, points out that her entire employment term with the USPS lasted "less than a 30 day span of time." *Pl.'s First Mem*. at 4. As a casual worker within the excepted service who had not completed "1 year of current continuous employment" with USPS, Ms. Bailey cannot state a claim for relief under Chapter 43 of the Civil Service Reform Act of 1978. *See* 5 U.S.C. § 4303 (f)(3).

Moreover, as the Postmaster General points out, even if Ms. Bailey could invoke any termination or performance review-related protections under Chapter 43,

"[u]nder the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996). Ms. Bailey makes no claim that she brought her allegations for administrative review before the Merit Systems Protection Board, as required by the CSRA, before attempting to amend her complaint now. *See id.* at 1433-34. The Court denies Ms. Bailey's request to add a Performance Rating Claim because she does not qualify for Chapter 43 protections and did not exhaust her administrative remedies.

## V.   CONCLUSION

The Court DENIES Amy Bailey's Motions for Leave to File an Amended Complaint (ECF Nos. 52, 60, 62).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2022